# In the United States Court of Federal Claims

No. 17-1188C

(Filed Under Seal:  December 11, 2017)

(Reissued:  December 20, 2017)

**********************************

| | |
|---|---|
| **VETERANS CONTRACTING GROUP, INC.,** ) | Post-award bid protest; qualification of an offeror as a service-disabled veteran-owned small business; divergent standards for eligibility in regulations of the Small Business Administration and the Department of Veterans Affairs; *Auer* deference |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **UNITED STATES,** ) | |
| ) | |
| **Defendant** ) | |
| ) | |
| **and** ) | |
| ) | |
| **WILLIAMS BUILDING COMPANY, INC.,** ) | |
| ) | |
| ) | |
| **Intervenor-Defendant.** ) | |
| ) | |

**********************************

Joseph A. Whitcomb, Whitcomb, Selinsky, McAuliffe, PC, Denver, Colorado, for plaintiff.  With him on the briefs was Brandon M. Selinsky, Whitecomb, Selinsky, McAuliffe, PC, Denver, Colorado.

Alison S. Vicks, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.  With her on the brief were Chad A. Readler, Acting Assistant Attorney General, Civil Division, Robert E. Kirschman, Jr., Director, and Tara K. Hogan, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington D.C.  Of counsel were Rita Fang, Attorney-Advisor, United States Army Corps of Engineers, and Karen Hunter, Office of General Counsel, United States Small Business Administration.

John M. Manfredonia, Manfredonia Law Offices, LLC, Cresskill, New Jersey, for intervenor-defendant.

## OPINION AND ORDER[1]

LETTOW, Judge.

This post-award bid protest features interactions between complex and divergent regulatory frameworks, giving rise to a harsh, even perverse, result.  Plaintiff, Veterans Contracting Group ("Veterans"), was verified by the United States Department of Veterans Affairs ("VA") as a service-disabled veteran-owned small business ("SDVOSB"), and subsequently received a contract award from the U.S. Army Corps of Engineers ("the Corps contract") in January 2017 that was set aside for SDVOSBs.  Another bidder, intervenor-defendant, Williams Building Company ("Williams"), protested the award before the Small Business Administration ("SBA"), which ultimately determined in July 2017 via a ruling by SBA's Office of Hearings and Appeals ("OHA") that Veterans did not qualify as an SDVOSB under the SBA's rules and was therefore ineligible for the award.  Williams was then awarded the contract.  Shortly thereafter, the VA informed Veterans that it was being removed from the VA database for qualified SDVOSBs, based on the SBA's ruling.[2]

Veterans challenges OHA's decision as arbitrary, capricious, and contrary to the SBA's regulations and has moved for judgment on the administrative record.  Veterans requests that the court enter a permanent injunction on its behalf, compelling SBA to reconsider Veterans' eligibility as an SDVOSB and to award Veterans the Corps contract.  The government has opposed that motion and filed a cross-motion for judgment on the administrative record.

## STATUTORY AND REGULATORY FRAMEWORK

"In an effort to encourage small businesses, Congress has mandated that federal agencies restrict competition for some federal contracts."  *Kingdomware Techs., Inc. v. United States*, __ U.S. __, __, 136 S. Ct. 1969, 1973 (2016).  Congress particularly sought to improve the position of "small business concerns owned and controlled by socially and economically disadvantaged individuals."  15 U.S.C. § 637(d)(1).  To that end, it has required "each agency to set an annual goal that presents, for that agency, the maximum practicable opportunity for contracting with small businesses, including, [relevant here,] those small business concerns owned and controlled by service-disabled veterans."  *Kingdomware Techs.*, 136 S.Ct. at 1973 (internal quotation marks omitted) (citing 15 U.S.C. § 644(g)(1)(B)); *see also* 38 U.S.C. § 8128(a) ("In procuring goods and services pursuant to a contracting preference under this title or any other provision of law, [VA] shall give priority to a small business concern owned and controlled by veterans . . . .").

---

[1]Because of the protective order entered in this case, this opinion was initially filed under seal.  The parties were requested to review this decision and provide proposed redactions of any confidential or proprietary information.  No redactions were requested.

[2]In a separate but related pre-award bid protest brought by Veterans challenging action by the VA to disqualify Veterans, Veterans sought and obtained a preliminary injunction setting aside VA's removal of Veterans from the VA database.  *See Veterans Contracting Grp., Inc. v. United States*, 133 Fed. Cl. 613 (2017).  That protest concerned two procurements being undertaken by VA.  *Id.* at 616.

The task of promulgating regulations "set[ting] forth procedures . . . to set aside contracts for" SDVOSBs has been assigned to at least two distinct agencies, SBA and VA. *See Kingdomware Techs.*, 136 S. Ct. at 1973 (internal quotation marks omitted); *see also* 15 U.S.C. § 657f (SBA); 38 U.S.C. § 8127(a), (e) (VA).

VA and SBA have established separate but overlapping regulatory frameworks for these set-asides. *Compare* 38 C.F.R. Part 74 (VA), *with* 13 C.F.R. Part 125 (SBA). Both initially relied on self-certification to determine the eligibility of bidders, but the programs have materially diverged, both in terms of the standards for eligibility and the process for confirming or rejecting qualification.

*A. VA Program*

Congress authorized the VA to set aside certain contracts for "small business concerns owned and controlled by veterans with service-connected disabilities," through the Veterans Benefits, Health Care, and Information Technology Act of 2006 ("Veterans Benefits Act"), Pub. L. No. 109-461, tit V, 120 Stat. 3403, 3425 (codified in relevant part at 38 U.S.C. §§ 8127-28). *See* 38 U.S.C. § 8127(a), (e). The Act and, *a fortiori*, the regulations it authorizes apply only to VA procurements. *See Angelica Textile Servs., Inc. v. United States*, 95 Fed.Cl. 208, 222 (2010) ("The [VA] is responsible for implementing the Veterans Benefits Act; indeed, it is the only federal department or agency to which the Act's requirements apply."); *see also* 48 C.F.R. § 819.7002 (explaining that the VA's implementing regulations apply only to "VA contracting activities and to its prime contractors" and "to any government entity that has a contract . . . or other arrangement with VA to acquire goods and services *for VA*") (emphasis added).

VA implemented the Veterans Benefits Act through the "Veterans First Contracting Program," established in 2007. *See AmBuild Co. v. United States*, 119 Fed. Cl. 10, 19 (2014). "At the Program's commencement, SDVOSB . . . entities were permitted to self-certify . . . for registration in the VetBiz VIP database." *Id.* But the authorizing statute was subsequently amended, requiring the Secretary of Veterans Affairs to maintain the database and certify contracting entities through the VA's Center for Verification and Evaluation ("CVE"). *Id.* (citing 38 U.S.C. § 8127(e), (f)); *see also* 48 C.F.R. § 804.1102. A business must be included on the VA's VIP database to qualify as an eligible SDVOSB for a contract award. *See* 38 U.S.C. § 8127(e), (f); 48 C.F.R. § 804.1102. The CVE now certifies participating entities and maintains such certification by performing examinations that "review . . . a[t] a minimum . . . all documents supporting the application, as described in [38 C.F.R.] § 74.12." *See* 38 C.F.R. § 74.20(b). These "examination[s] may be conducted on a random, unannounced basis, or upon receipt of specific and credible information alleging that a participant no longer meets eligibility requirements." *Id.* § 74.20(a).

"When CVE believes that a participant's verified status should be cancelled prior to the expiration of its eligibility term," CVE notifies the small business concern and allows 30 days for the concern to respond. *See* 38 C.F.R. § 74.22(a)-(b). Upon a determination that cancellation is warranted, the director of the CVE will issue a reasoned notice of cancellation, and the concern will be removed from the VetBiz VIP Database. *See id.* § 74.22(c)-(d). The concern then has a right to appeal the determination to the Office of Small and Disadvantaged Business Utilization

and Center for Veterans Enterprise "within 30 days of receipt of [the] cancellation decision" or to "re-apply after it has met all eligibility criteria." *Id.* § 74.22(c), (e).

To qualify for CVE certification as an SDVOSB, "[a] small business concern must be *unconditionally owned* and *controlled* by one or more eligible . . . service-disabled veterans." 38 C.F.R. 74.2(a) (emphasis added). When the small business concern is a corporation, "at least 51 percent of each class of voting stock outstanding and 51 percent of the aggregate of all stock outstanding must be unconditionally owned by one or more . . . service-disabled veteran." *Id.* § 74.3(b)(3). VA has defined unconditional ownership:

> *Ownership must not be subject to* conditions precedent, conditions subsequent, executory agreements, voting trusts, restrictions on assignments of voting rights, or other arrangements causing or potentially causing ownership benefits to go to another (*other than after death or incapacity*). The pledge or encumbrance of stock or other ownership interest as collateral, including seller-financed transactions, does not affect the unconditional nature of ownership if the terms follow *normal commercial practices* and the owner retains control absent violations of the terms.

*Id.* § 74.3(b) (emphasis added). As to control of a SDVOSB, the veteran must have "both the day-to-day management and long-term decision-making authority." *Id.* § 74.4(a). More specifically, he or she is required to have "both the strategic policy setting exercised by boards of directors and the day-to-day management and administration of business operations." *Id.* § 74.4(b). "Control is not the same as ownership, although both may reside in the same person." *Id.*

This court previously interpreted and applied these regulations in *Miles Constr., LLC, v. United States*, 108 Fed. Cl. 792 (2013), and *AmBuild*, 119 Fed. Cl. 10. In *Miles*, the VA had removed Miles Construction from the VIP database because there was a restriction on the service-disabled veteran's ownership interest, allegedly rendering his ownership conditional. 108 Fed. Cl. at 800-01. The company's Operating Agreement granted a right of first refusal to "the company, or the remaining members of the company if the company declines . . . to purchase a member's shares, should he or she decide to sell." *Id.* at 801. The government asserted that that provision of the Operating Agreement was an executory agreement that violated 38 C.F.R. § 74.3(b) "because it prevent[ed the] owner from acting [unilaterally] upon his ownership interest." *Id.* This court disagreed because the right-of-first-refusal provision was "not presently executory" as it had not been triggered by the veteran "choos[ing] to sell some of his . . . stake" and because it was "a standard provision used in normal commercial dealings." *Id.* at 803 (relying on 38 C.F.R. § 74.3(b)).

In *AmBuild*, the question was, *inter alia*, whether a provision of an Operating Agreement that permitted the company to purchase the veteran-owner's ownership interest in cases of "bankruptcy, receivership, and transfer by court order or operation of law" rendered ownership conditional in violation of 38 C.F.R. § 74.3(b). 119 Fed. Cl. at 16, 23-24. The government argued that it did because "personal bankruptcy does not ordinarily result in the divesture of ownership." *Id.* at 24. But this court disagreed, noting that "the property of every business

4

owner is automatically placed in custody of the court upon bankruptcy," and determining that the operating agreement reflected "a standard commercial arrangement in compliance with 38 C.F.R. § 74.3(b)." *Id.* at 25.

## B. SBA Programs

Congress has enacted, and committed to SBA's oversight, three separate government-contracting programs with eligibility requirements for small businesses: The Service-Disabled Veteran-Owned Small Business Concern ("SDVOSBC") program[3]; the Women-Owned Small Businesses ("WOSB") program[4]; and the 8(a) Business Development program for small disadvantaged businesses.[5]  Unlike the VA regulatory approach, "SBA[] program[s] . . . ha[ve] no required verification program, relying instead on [annual self-certification via] the System of Award Management." *See Veterans Contracting Group, Inc.*, SBA No. VET-265, 2017 WL 4124865 at *9 (Aug. 31, 2017) (also located at AR 51-785 to 99);[6] *see also* 13 C.F.R. § 125.33. In place of CVE-type oversight, SBA permits other bidders on specific solicitations to protest the status or the ownership and control of the competing small business concern. *See* 13 C.F.R. § 125.29 ("What are the grounds for filing an SDVOSBC protest?").  When challenging on ownership or control grounds, the protestor must "present[] credible evidence that the concern is not 51% owned and controlled by one or more service-disabled veterans." *Id.* § 125.29(b).  Such protests are handled first by an SBA area field office and then are appealable to OHA. *See id.* §§ 125.30-25.31; *see also generally id.* Part 134 ("Rules of Procedure Governing Cases Before the Office of Hearings and Appeals").

---

[3]The SBA's SDVOSBC program was authorized by the Veterans Entrepreneurship and Small Business Development Act of 1999, Pub. L. No. 106-50, 113 Stat. 233 (codified at 15 U.S.C. §§ 657b-57c), and the Veterans Benefits Act of 2003, Pub. L. No. 108-183, 117 Stat. 2651 (codified at 15 U.S.C. § 657f and 38 U.S.C. §§ 1821, 4113, 5109B, 7112), and implemented via SBA regulations codified at 13 C.F.R. §§ 125.11 to 125.33.

[4]The WOSB program was authorized by the Small Business Act, Pub. L. No. 85-536, 72 Stat. 384 (codified at 15 U.S.C. §§ 631-57, 657a-57b, 657d-57f, 657i-57o, 657q-57s), *as amended by* the Consolidated Appropriations Act, 2001, Pub. L. No. 106-554, 114 Stat. 2763, and implemented via SBA regulations codified at 13 C.F.R. §§ 127.100 to 127.701.

[5]The 8(a) program was authorized by the Small Business Act, Pub. L. No. 85-536, 72 Stat. 284 (codified at 15 U.S.C. §§ 631-57, 657a-57b, 657d-57f, 657i-57o, 657q-57s), *as amended by* the Small Business Administration Reauthorization and Amendments Act of 1990, Pub. L. No. 101-574, 104 Stat. 2814, and implemented via SBA regulations codified at 13 C.F.R. §§ 124.1 to 124.704.

[6]Citations to the administrative record refer to the record as filed on September 20, 2017 and corrected with additions on October 18, 2017.  The record is divided into tabs and paginated sequentially.  In citing to the record, the court will first designate the tab, followed by the page number.  For example, AR 51-785 refers to tab 51 page 785 of the administrative record.

Eligibility in each of the above SBA programs requires small business concerns to be "at least 51% unconditionally and directly owned [and controlled] by one or more" members of the relevant disadvantaged group. *See* 13 C.F.R. § 124.105 to 124.106 (8(a) program); *Id.* § 125.12 to 125.13 (SDVOSBC program); *Id.* § 127.201 to 127.202 (WOSB program). The regulations implementing the 8(a) and WOSB programs both include similar, though not precisely identical, definitions of "unconditional ownership," the former promulgated in 1998 and the latter in 2010. In the 8(a) program, unconditional ownership is defined as:

> *ownership that is not subject to* conditions precedent, conditions subsequent, *executory agreements*, voting trusts, restrictions on or assignments of voting rights, or other arrangements causing or potentially causing ownership benefits to go to another (*other than after death or incapacity*). The pledge or encumbrance of stock or other ownership interest as collateral, including seller-financed transactions, does not affect the unconditional nature of ownership if the terms *follow normal commercial practices* and the owner retains control absent violations of the terms.

*Id.* § 124.3 (emphasis added). The WOSB program defines it as ownership that is:

> *not . . . subject to* any conditions, *executory agreements*, voting trusts, or other arrangements that cause or potentially cause ownership benefits to go to another. The pledge or encumbrance of stock or other ownership interest as collateral, including seller-financed transactions, does not affect the unconditional nature of ownership if the terms *follow normal commercial practices* and the owner retains control absent violations of the terms.

*Id.* § 127.201 (emphasis added).

Contrastingly, the regulations for the SDVOSBC program, adopted in 2004, do not include a definition of unconditional ownership. *See* 13 C.F.R. § 125.11 (specifying definitions important to the SDVOSBC program, but omitting a definition of "unconditional ownership"). Instead, SBA has applied an interpretation by OHA in 2006 of what is now 13 C.F.R. § 125.12, as set forth in *The Wexford Group Int'l, Inc.*, SBA No. SDV-105, 2006 WL 4726737 (June 29, 2006). There, with no applicable regulatory definition, OHA derived "the plain and ordinary meaning of the word" "unconditional" by looking to a dictionary. *Wexford*, 2006 WL 4726737, at *6 & n.2. From the dictionary definition, OHA determined that "in the context of 13 C.F.R. § 125.[12],"

> unconditional necessarily means there are no conditions or limitations upon an individual's present or immediate right to exercise full control and ownership of the concern. Nor can there be any impediment to the exercise of the full range of ownership rights. Thus, a service-disabled veteran: (1) Must immediately and fully own the company (or stock) without having to wait for future events; (2) Must be able to convey or transfer interest in his ownership interest or stock whenever and to whomever they choose; and (3) Upon departure, resignation, retirement, or death, still own their stock and do with it as they choose. In sum,

service-disabled veterans must immediately have an absolute right to do anything
they want with their ownership interest or stock, whenever they want.

*Id.*  This absolutist interpretation is a sharp departure from the definitions promulgated via
regulation in the 8(a) and WOSB programs.  The definitions in those programs build in nuances
virtually identical in effect to VA's definition, particularly the allowance to "follow normal
commercial practices" common to each of them.  *See* 38 C.F.R. § 74.3; 13 C.F.R. §§ 124.3,
127.201.  For SDVOSBs, however, service-disabled veterans must have power over their
businesses flowing from "an absolute right to do anything they want with their ownership
interest or stock, whenever they want."  *See Wexford*, 2006 WL 4726737 at *6.  Such power,
instead of assisting veterans, may impede their efforts to find others willing to take the risk of
joining a business venture with them.

The contrast is even starker when one considers the close similarities between SBA's and
VA's definitions of "control" in the SDVOSB programs.  Pursuant to SBA regulations, the
SDVOSBC is controlled when "both the long-term decision[-]making and the day-to-day
management and administration of the business operations [are] conducted by one or more
service-disabled veterans."  13 C.F.R. § 125.13(a).  In the specific case of corporations, "service-
disabled veterans . . . must control the [b]oard of [d]irectors of the concern."  *Id.* § 125.13(e).
They are in control of the board of directors when (1) "[o]ne [or] more service-disabled veterans
own at least 51% of all voting stock of the concern, are on the [b]oard of [d]irectors and have the
percentage of voting stock necessary to overcome any super majority voting requirements; or (2)
. . . comprise the majority of voting directors through actual numbers or . . . through weighted
voting."  *Id.* § 125.13(e)(1)-(2).

### C. *Congressional Action to Reconcile VA's and SBA's Divergent Regulations*

Congress has recognized the divergence of the SBA's and VA's SDVOSB programs and
has sought to consolidate and reconcile them via amendments to their authorizing statutes.  *See*
National Defense Authorization Act for Fiscal Year 2017 ("2017 NDAA"), Pub. L. No. 114-328,
§ 1832, 130 Stat. 2000.  The extensive pertinent section of the 2017 NDAA provides:

SEC. 1832. UNIFORMITY IN SERVICE-DISABLED VETERAN
DEFINITIONS.
  (a) SMALL BUSINESS DEFINITION OF SMALL BUSINESS CONCERN
      CONSOLIDATED.—Section 3(q) of the Small Business Act (15 U.S.C.
      632(q)) is amended—
  (1) by amending paragraph (2) to read as follows:
    "(2) SMALL BUSINESS CONCERN OWNED AND CONTROLLED
      BY SERVICE-DISABLED VETERANS.—The term 'small business
      concern owned and controlled by service-disabled veterans' means
      any of the following:
    "(A) A small business concern—
      "(i) not less than 51 percent of which is owned by one or more
        service-disabled veterans or, in the case of any publicly owned
        business, not less than 51 percent of the stock (not including

any stock owned by an ESOP) of which is owned by one or more service-disabled veterans; and

"(ii) the management and daily business operations of which are controlled by one or more service-disabled veterans or, in the case of a veteran with permanent and severe disability, the spouse or permanent caregiver of such veteran.

"(B) A small business concern—

"(i) not less than 51 percent of which is owned by one or more service-disabled veterans with a disability that is rated by the Secretary of Veterans Affairs as a permanent and total disability who are unable to manage the daily business operations of such concern; or

"(ii) in the case of a publicly owned business, not less than 51 percent of the stock (not including any stock owned by an ESOP) of which is owned by one or more such veterans.

"(C)(i) During the time period described in clause (ii), a small business concern that was a small business concern described in subparagraph (A) or (B) immediately prior to the death of a service-disabled veteran who was the owner of the concern, the death of whom causes the concern to be less than 51 percent owned by one or more service-disabled veterans, if—

"(I) the surviving spouse of the deceased veteran acquires such veteran's ownership interest in such concern;

"(II) such veteran had a service-connected disability (as defined in section 101(16) of title 38, United States Code) rated as 100 percent disabling under the laws administered by the Secretary of Veterans Affairs or such veteran died as a result of a service-connected disability; and

"(III) immediately prior to the death of such veteran, and during the period described in clause (ii), the small business concern is included in the database described in section 8127(f) of title 38, United States Code.

"(ii) The time period described in this clause is the time period beginning on the date of the veteran's death and ending on the earlier of—

"(I) the date on which the surviving spouse remarries;

"(II) the date on which the surviving spouse relinquishes an ownership interest in the small business concern; or

"(III) the date that is 10 years after the date of the death of the veteran."; and

(2) by adding at the end the following new paragraphs:

"(6) ESOP.—The term 'ESOP' has the meaning given the term 'employee stock ownership plan' in section 4975(e)(7) of the Internal Revenue Code of 1986 (26 U.S.C. 4975(e)(7)).

"(7) SURVIVING SPOUSE.—The term 'surviving spouse' has the meaning given such term in section 101(3) of title 38, United States Code.".

(b) VETERANS AFFAIRS DEFINITION OF SMALL BUSINESS CONCERN CONSOLIDATED.—

(1) IN GENERAL.—Section 8127 of title 38, United States Code, is amended—

(A) by striking subsection (h) and redesignating subsections (i) through (l) as subsections (h) through (k), respectively; and

(B) in subsection (k), as so redesignated—

(i) by amending paragraph (2) to read as follows:

"(2) The term 'small business concern owned and controlled by veterans' has the meaning given that term under section 3(q)(3) of the Small Business Act (15 U.S.C. 632(q)(3))."; and

(ii) by adding at the end the following new paragraph:

"(3) The term 'small business concern owned and controlled by veterans with service-connected disabilities' has the meaning given the term 'small business concern owned and controlled by service-disabled veterans' under section 3(q)(2) of the Small Business Act (15 U.S.C. 632(q)(2)). ".

(2) CONFORMING AMENDMENTS.—Such section is further amended—

(A) in subsection (b), by inserting "or a small business concern owned and controlled by veterans with service-connected disabilities" after "a small business concern owned and controlled by veterans";

(B) in subsection (c), by inserting "or a small business concern owned and controlled by veterans with service-connected disabilities" after "a small business concern owned and controlled by veterans";

(C) in subsection (d) by inserting "or small business concerns owned and controlled by veterans with service-connected disabilities" after "small business concerns owned and controlled by veterans" both places it appears; and

(D) in subsection (f)(1), by inserting ", small business concerns owned and controlled by veterans with service-connected disabilities," after "small business concerns owned and controlled by veterans".

(c) TECHNICAL CORRECTION.—Section 8(d)(3) of the Small Business Act (15 U.S.C. 637(d)(3)), is amended by adding at the end the following new subparagraph:

"(H) In this contract, the term 'small business concern owned and controlled by service-disabled veterans' has the meaning given that term in section 3(q).".

(d) REGULATIONS RELATING TO DATABASE OF THE SECRETARY OF VETERANS AFFAIRS.—

(1) REQUIREMENT TO USE CERTAIN SMALL BUSINESS ADMINISTRATION REGULATIONS.—Section 8127(f)(4) of title 38, United States Code, is amended by striking "verified" and inserting "verified, using regulations issued by the Administrator of the Small

9

Business Administration with respect to the status of the concern as a small business concern and the ownership and control of such concern,".

   (2) PROHIBITION ON SECRETARY OF VETERANS AFFAIRS ISSUING CERTAIN REGULATIONS.—Section 8127(f) of title 38, United States Code, is amended by adding at the end the following new paragraph:

     "(7) The Secretary may not issue regulations related to the status of a concern as a small business concern and the ownership and control of such small business concern.".

(e) DELAYED EFFECTIVE DATE.—The amendments made by subsections (a), (b), (c), and (d) shall take effect on the date on which the Administrator of the Small Business Administration and the Secretary of Veterans Affairs jointly issue regulations implementing such sections.

(f) APPEALS OF INCLUSION IN DATABASE.—

   (1) IN GENERAL.—Section 8127(f) of title 38, United States Code, as amended by this section, is further amended by adding at the end the following new paragraph:

    "(8)(A) If a small business concern is not included in the database because the Secretary does not verify the status of the concern as a small business concern or the ownership or control of the concern, the concern may appeal the denial of verification to the Office of Hearings and Appeals of the Small Business Administration (as established under section 5(i) of the Small Business Act). The decision of the Office of Hearings and Appeals shall be considered a final agency action.

    "(B)(i) If an interested party challenges the inclusion in the database of a small business concern owned and controlled by veterans or a small business concern owned and controlled by veterans with service-connected disabilities based on the status of the concern as a small business concern or the ownership or control of the concern, the challenge shall be heard by the Office of Hearings and Appeals of the Small Business Administration as described in subparagraph (A). The decision of the Office of Hearings and Appeals shall be considered final agency action.

     "(ii) In this subparagraph, the term 'interested party' means—

      "(I) the Secretary; or

      "(II) in the case of a small business concern that is awarded a contract, the contracting officer of the Department or another small business concern that submitted an offer for the contract that was awarded to the small business concern that is the subject of a challenge made under clause (i).

    "(C) For each fiscal year, the Secretary shall reimburse the Administrator of the Small Business Administration in an amount necessary to cover any cost incurred by the Office of Hearings and Appeals of the Small Business Administration for actions taken by the Office under this paragraph. The Administrator is authorized to accept such

> reimbursement. The amount of any such reimbursement shall be
> determined jointly by the Secretary and the Administrator and shall be
> provided from fees collected by the Secretary under multiple-award
> schedule contracts. Any disagreement about the amount shall be
> resolved by the Director of the Office of Management and Budget.".
>
> (2) EFFECTIVE DATE.—Paragraph (8) of subsection (f) of title 38,
> United States Code, as added by paragraph (1), shall apply with respect
> to a verification decision made by the Secretary of Veterans Affairs on or
> after the date of the enactment of this Act.

2017 NDAA § 1832. Congress has delayed the effective date of the reconciling Section until
"the date on which the Administrator of the [SBA] and the Secretary of [VA] jointly issue
regulations implementing" the new consolidated program. 2017 NDAA § 1832(e). No such
implementing regulations have been promulgated.

### D.  Anomaly Created by VA's Adoption of 38 C.F.R. § 74.2(e)

A confounding aspect of these dueling regulatory programs arises from the VA's
adoption of 38 C.F.R. § 74.2(e) in 2008. As explained above, VA has set out in its regulations
the basis on which it may cancel the verified status of a small business concern, see 38 C.F.R. §
74.21, and the procedures by which it removes such concerns from the VetBiz VIP database, see
*id.* § 74.22. 38 C.F.R. § 74.2(e) appears to circumvent that cancellation and removal process:

> Any firm registered in the VetBiz VIP database that is found to be ineligible due
> to an SBA protest decision or other negative finding will be immediately removed
> from the VetBiz VIP database. Until such time as CVE receives official
> notification that the firm has proven that it has successfully overcome the grounds
> for the determination or that the SBA decision is overturned on appeal, the firm
> will not be eligible to participate in the [Veterans First Contracting P]rogram.

*Id.*

With this single provision, protest decisions by SBA, presumably applying SBA's own
regulation, could potentially displace VA's cancellation and removal processes without
accounting for the differences between the two underlying regulatory eligibility criteria. These
differences are insignificant if and when the SBA protest giving rise to removal from the VIP
database treats an area in which the regulations are the same or similar, *e.g.*, size of the business;
if SBA determines that an SDVOSB is not small then it would be justifiably disqualified from
both programs. On the other hand, Subsection 74.2(e) requires an SDVOSB's immediate
removal from the VIP database if the business fails to meet the SBA's *Wexford* definition of
"unconditional" despite meeting the VA's definition of the term as set out at 38 C.F.R. § 74.3(b).
This potential outcome is anomalous.[7]

---

[7]This outcome was set aside by a preliminary injunction issued in *Veterans Contracting*,
133 Fed. Cl. 613, which addressed protests involving two VA procurements.

## FACTS[8]

Veterans is incorporated in and has its principal offices in New York.  Compl. ¶ 8.
Ronald Montano, a service-disabled veteran, owns 51 percent of the company and Greg Masone
owns the remaining 49 percent.  Compl. ¶ 17; AR 31-633.  Article 1.01 of the Veterans
shareholder agreement designates Mr. Montano as the President and Vice President and Mr.
Masone as the Secretary and Treasurer, "so long as the parties are [s]hareholders of the
[c]orporation."  Intervenor-Defendant's Mot. for Judgment on the Admin. Record and Resp. to
Pl.'s Mot. for Judgment on the Admin. Record ("Intervenor's Mot.") at 10-11, ECF No. 24.  "On
July 17, 2013, the VA, acting through the [CVE], verified Veterans as a qualified SDVOSB on
its [VIP] database."  *Veterans Contracting*, 133 Fed. Cl. at 616.  The VA then carried out
subsequent annual site visits between 2014 and 2016, evaluating and reaffirming Veterans'
eligibility to remain in the database as an SDVOSB.  *Id.*

On December 1, 2016, the U.S. Army Corps of Engineers issued an invitation to bid on
an SDVOSB set-aside, No. W912DS-16-B-0017, to remove hazardous material and carry out
building demolition at the Veterans Affairs St. Albans Community Living Center Campus,
Jamaica, New York.  Compl. ¶¶ 10-11; AR 4-14.  Both Veterans and Williams submitted bids,
self-certifying as SDVOSBs.  Compl. ¶ 12.  On January 5, 2017, Veterans was determined to be
the lowest bidder and awarded the contract; Williams, second in line for the award, filed a protest
on January 11, challenging both Veterans' size and status as an SDVOSB.  *See* Compl. ¶¶ 13-14;
AR 31-632.  The relevant SBA area office issued a size determination on February 2, concluding
that Veterans was a small business.  AR 31-632 to 36.  Later that month, the area office also
issued its status determination, addressing both control and ownership and concluding that
Veterans "met the [SDVOSB] eligibility requirements at the time of its [bid]."  AR 32-637 to 42.

Williams appealed the status determination to OHA on February 28, 2017, alleging
"errors of law and fact."  AR 34-646 to 61.  Before OHA rendered a decision on Williams'
appeal, SBA requested that the SBA area office's determination be remanded "for further review
and investigation."  AR 40-726 to 27.  OHA granted that remand on April 3.  AR 40-727.  On
remand, the SBA area office reversed itself both as to ownership and control, determining that
Veterans was ineligible to bid as an SDVOSB.  *See* AR 51-786 to 88.  The SBA area office
explained that, in light of Veteran's shareholder agreement, Mr. Montano did not unconditionally
own Veterans because that agreement restricted his heirs' ability to convey or transfer Veterans
stock.  *See Veterans Contracting*, 133 Fed. Cl. at 617.  On July 21, three days after the SBA area
office determination, "VA informed Veterans that it was being removed from the VA VIP
database in accordance with 38 C.F.R. § 74.2(e) based on the SBA area office determination that
Veterans did not qualify as a SDVOSB."  *Id.* (internal brackets and quotations marks omitted).
Veterans filed a bid protest in this court on July 28, challenging that removal and seeking a
preliminary injunction.  *Id.* at 617-18.  This court issued a preliminary injunction on August 22,
ordering VA to reinstate Veterans to the database.  *Id.* at 624.

---

[8]The recitations that follow constitute findings of fact by the court drawn from the
administrative record of the procurement filed pursuant to RCFC 52.1(a).  *See Bannum, Inc. v.
United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005) (explaining that bid protest proceedings
"provide for trial on a paper record, allowing fact-finding by the trial court").

While the related bid protest was pending, Veterans appealed the adverse area office determination to OHA, which, on August 31, 2017, affirmed the area office's determination as to ownership but reversed on the question of control.  AR 51-785, 792 to 97.  OHA's "unconditional ownership" analysis focused on Articles 9.01 and 9.02 of Veterans' shareholder agreement.  *See* AR 51-793 to 95.  Article 9.01 states:

> In the event of death of a [s]hareholder, his executor, administrator or personal representative, as the case may be, shall be deemed to have offered all of the [s]hares of the [c]orporation owned by such [s]hareholder at the time of his death to the [c]orporation and the [c]orporation shall purchase such shares at . . . a purchase price established in accordance with a "Certificate of Value."

AR 46-756.  Article 9.02 states:

> In the event of a final adjudication of incompetency for any [s]hareholder or the appointment of a guardian under Article 81 of the New Y[ork] State Mental Hygiene law ([]or any successor statute) for any [s]hareholder, then, such [s]hareholder or his personal representative or guardian, as the case may be, shall be deemed to have offered all the [s]hares of the [c]orporation, owned by such [s]hareholder at the time of occurrence of any of the events specified above to the [c]orporation and the [c]orporation shall purchase such [s]hares at the [c]ertificate [v]alue and upon the terms and conditions . . . set forth [in Article 10.01].

Intervenor's Mot. at 7.

OHA agreed with the area office's determination that under *Wexford*, Articles 9.01 and 9.02 "unacceptably limit [a service-disabled veteran] shareholder's unconditional ownership of his or her shares."  AR 51-793.  In reaching that result, OHA determined that this court's decisions in *Miles* and *AmBuild* were distinguishable because they featured interpretations of definitions of "unconditional" in VA's regulations that included an exception for "normal commercial practices," a phrase not in *Wexford's* controlling definition.  AR 51-794 to 95.

On September 5, 2017, Veterans filed a complaint in this post-award bid protest.  *See generally* Compl.  Veterans challenges OHA's determination as arbitrary, capricious, and not in accordance with law and seeks a declaration from this court that it is "a valid SDVOSB and thus eligible for pending and future SDVOSB contract . . . awards."  Compl. ¶¶ 50-56.  Further, Veterans seeks an injunction ordering "SBA to reevaluate [its] determination" and ordering "the Corps to restore the status quo before it awarded" Williams the Corps contract, effectively reinstating the award to Veterans.  Compl. ¶¶ 58-63.  Finally, Veterans also seeks "attorneys' fees and expenses" and "such other and further relief as is equitable and just."  Compl. ¶ 64.

Veterans has moved for judgment on the administrative record.  *See generally* Pl.'s Mot. for Judgment on the Admin. Record ("Pl.'s Mot."), ECF No. 21.  Williams and the government have also moved for judgment on the administrative record.  *See generally* Def.'s Cross-Mot. for Judgment on the Admin. Record and Resp. to Pl.'s Mot. for Judgment on the Admin. Record

("Def.'s Cross-Mot."), ECF. No. 25; Intervenor's Mot. All issues have been fully briefed and argued and are now ready for disposition.

## STANDARDS FOR DECSION

A provision of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, governs the court's review of a challenge to an agency's contract award. *See* 28 U.S.C. § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5."). Under the APA, courts may set aside agency decisions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), subject to the traditional balancing test applicable to a grant of equitable relief. *See PGBA, LLC v. United States*, 389 F.3d 1219, 1224-28 (Fed. Cir. 2004). The question of whether the court would have applied the procurement regulations in a different manner than did the agency is irrelevant to this inquiry. *See Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989). In short, the court may not "substitute its judgement for that of the agency." *Miles*, 108 Fed. Cl. at 798 (citing *Keeton Corrs., Inc. v. United States*, 59 Fed. Cl. 753, 755 (2004) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971))). The court may overturn an agency decision only "if '(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).

In contrast, when reviewing an agency's interpretation of law, "[i]t is emphatically the province and duty of the [court] to say what the law is." *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). But where the agency is interpreting its own regulations and those regulations are ambiguous, the agency interpretation will control so long as it is not "plainly erroneous or inconsistent with the regulation." *See Auer v. Robbins*, 519 U.S. 452, 461 (1997) (internal citations omitted). Furthermore, "the fact that [an] agency has adopted different definitions in different contexts" does not diminish the court's obligation to defer to the agency. *See Land of Lincoln Mut. Health Ins. Co. v. United States*, 129 Fed. Cl. 84, 106 (2016) (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 863-64 (1984)). Rather, the current interpretation need only "reflect the agency's fair and considered judgment." *See Auer*, 519 U.S. at 462 (determining that a legal brief was a satisfactory vehicle for conveying the agency's fair and considered judgment).

## ANALYSIS

### A. "Unconditional Ownership" Under 13 C.F.R. § 125.12

Veterans claims that SBA's determination that it was not eligible to participate in the SDVOSBC program and OHA's affirmation of that determination are arbitrary, capricious, and contrary to law because the *Wexford* approach to determining a veteran's ownership is indefensible. *See* Pl.'s Mot. at 14. Veterans supports that assertion with two arguments: (1) This court's opinions in *AmBuild* and *Miles*, "two decisions subsequent to *Wexford*," provide the relevant definition and analysis for determining the conditionality of Mr. Montano's ownership,

*see* Pl.'s Mot. at 14-16; and (2) Even if *AmBuild* and *Miles* are not dispositive, *Wexford* remains inapplicable because "SBA failed to consider its own regulations," *see* Pl.'s Mot. at 8, 16-19.

Veterans' attempt to rely on this court's decisions in *AmBuild* and *Miles* is misplaced because both cases interpret VA's procurement regulations, not SBA's. The definitions in VA's procurement regulations apply only to VA procurements. *See Angelica Textile*, 95 Fed. Cl. at 222. As such, *AmBuild* and *Miles* are irrelevant to bid protests concerning solicitations from the U.S. Army Corps of Engineers or other non-VA agencies. Therefore, they do not bear on construing and applying SBA's divergent regulations relating to unconditional ownership.

Veterans' additionally contends that *Wexford* in and of itself is not controlling when considering only SBA regulations. *See* Pl. Mot. at 8. In another decision concerning SDVOSBs, OHA has looked to the 8(a) program definitions for "guidance [when] interpreting the control requirement of [SDVOSB] eligibility." *Artis Builders, Inc.*, SBA No. VET-214, 2011 WL 7277416 at *4 (Apr. 6, 2011). By analogy, Veterans avers, the 8(a) regulations provide a definition of 'unconditional ownership' that allows for the succession planning outlined in Veterans' shareholder agreement." Pl.'s Mot. at 8. In Veterans' view, OHA acted arbitrarily and capriciously when it was not guided by the 8(a) definition to permit succession planning rather than applying the *Wexford* dictionary-definitional approach to derive the rule of decision applicable to Williams' protest. *See id.*

On examination, *Artis Builders* does not help Veterans in this case. There the basis for using the 8(a) definition of control as guidance when interpreting the SDVOSBC control requirement was that the two regulatory provisions were (and are) similar. *See, e.g.*, *Chevron Construction Services*, LLC, SBA No. VET-183, 2010 WL 1576707 at *5 (Feb. 17, 2010) ("[T]he control requirements for the SDVOSBC program are similar to those requirements for the 8(a) . . . program."); *Rush-Link One Joint Venture*, SBA No. VET-228, 2012 WL 926949 at *5 (Mar. 16, 2012) (applying the *Artis Builders* principle because there were "analogous regulations applicable to the 8(a) programs"). *Compare* 13 C.F.R. § 125.13 ("Who does SBA consider to control an SDVOSBC?"), *with* 13 C.F.R. § 124.106 ("When do disadvantaged individuals control an applicant or [p]articipant [in the 8(a) program]?"). These similarities simply do not exist for unconditional ownership. While the VA definition interpreted and applied in *AmBuild* and *Miles* is nearly identical to SBA's definitions set out for its 8(a) and WOSB programs, there is no such definition in place for SBA's SDVOSBC program. This is not to say that OHA could not have applied by analogy in this case the definitions SBA adopted for its 8(a) and WOSB programs, but its choice not to do so has some basis in the regulations. Accordingly, the question is one of whether OHA's interpretation is entitled to deference by the court under *Auer* and its progeny.

Respecting the *Auer* principles, Veterans' argument is that even where the agency has discretion, it still must "provide a coherent and reasonable explanation of its exercise of [that] discretion." Pl.'s Mot. at 15 (internal quotation works omitted). Here, SBA treats different programs differently, providing what amounts to the same definition for unconditional ownership in the 8(a) and WOSB programs while interpreting regulatory silence in the SDVOSBC program as leave to depart from that common definition. The regulatory history raises questions about that departure. The 8(a) definition was adopted in its current form in 1998. *See* Def.'s Notice of

Statutory and Regulatory Authority ("Def's Notice") at 4, ECF No. 29.  The SDVOSBC program regulations were promulgated in 2004, *id.* at 3, omitting any definition of unconditional ownership.  The resulting silence was interpreted by the OHA in 2006 in *Wexford*, when it chose not to apply the 8(a) definition.  The VA adopted its SDVOSB regulations and attendant definition of unconditional ownership in 2007, incorporating a definition of unconditional ownership nearly identical to that of SBA's 8(a) regulations.  Still later, SBA adopted its regulations for the WOSB program and included a definition mirroring the definition in its 8(a) rules.  *Id.*

SBA's departure in the SDVOSBC program could be understood in at least two different ways:  The regulations for the SDVOSBC program could have inadvertently omitted a definition of unconditional ownership even though they were promulgated against the regulatory backdrop of the 8(a) program, and OHA was mistaken in adopting the decisional approach in *Wexford*.  The fact that the WOSB program explicitly included its own definition indicates that SBA ordinarily would include such a definition respecting set-aside programs.  The omission could also be understood as intentional, to make the SDVOSBC program more draconian by not including a clarifying definition of ownership.  Even so, the former hypothetical does not account for why SBA would have left its SDVOSBC regulations unchanged after *Wexford*.

In short, SBA could have acted to conform its interpretation of the SDVOSBC regulations to those applicable to the 8(a) and WOSB programs, but it has not done so.  In the face of such silence, the Supreme Court's reminder that courts should not "pursue the theory of the dog that does not bark" in aid of statutory (and regulatory) interpretation becomes pertinent.  *See Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 592 & n.8 (1980) (referring to Sir Arthur Conan Doyle's famous Sherlock Holmes mystery, *The Silver Blaze*).  There, the Court declined to draw any inferences about an otherwise unambiguous statutory provision on the basis of what "Congress did *not* say" in the relevant legislative history.  *Id.* at 591-92.  Similarly, it would not be appropriate for this court to draw any inferences from the silence of the regulatory history of SBA's SDVOSBC program in this case.

While it is true that OHA must act rationally, *see Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), the decision to apply its own precedent is inherently consistent with our common law legal system.  It is not the place of the court to substitute its policy judgment for that of the agency.  *See id.*

SBA's omission of a definition of unconditional ownership in the SDVOSBC program produces draconian and perverse results in a case such as this one.  Nevertheless, without at least some indicia of SBA's intent or inadvertence regarding that omission, the court cannot remake the regulations in reliance on SBA's actions in the closely related contexts of the 8(a) and WOSB programs.  Therefore, OHA's decision stands and Veterans is ineligible to participate in *SBA's* SDVOSBC program, even though it is eligible to participate in *VA's* correlative program.

### B.  "Control" Under 13 C.F.R. § 125.13

Finally, Williams, as intervenor, challenges the OHA's determination that the service-disabled veteran, Mr. Montano, controls Veterans pursuant to 13 C.F.R. § 125.13.  *See*

Intervenor's Mot. at 10-11.  It argues that according to Veterans' shareholder agreement, Mr. Montano does not have the ability "to hire or fire the company's Secretary or Treasurer" and this "prevents him from controlling the day-to-day and long-term decisions of the company."  *Id.* at 11.

Nonetheless, due to the court's acceptance of OHA's ruling that Mr. Montano does not unconditionally own Veterans under SBA's regulations for the SDVOSBC program, it need not reach the question of control.

## CONCLUSION

For the reasons stated above, the government's and Williams' cross-motions for judgment on the administrative record are GRANTED, and Veterans' motion for judgment on the administrative record is DENIED.  The clerk is directed to enter judgment in accord with this disposition.

No costs.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Judge